**UNITED STATES of America, Plaintiff,**

v.

**Michael POLIZZI, Defendant.**

**Misc. No. 2517.**

United States District Court, C. D. California.

Jan. 15, 1971.

Gerald F. Uelmen, Asst. U. S. Atty., C.D.Cal., for plaintiff.

Norman L. Lippitt, Detroit, Mich., for defendant.

MEMORANDUM OF DECISION

HAUK, District Judge.

This matter came before the Court upon its order of September 2, 1970, requiring defendant Michael Polizzi to show cause as to why he should not be held in contempt of court for failure to appear before a Federal Grand Jury in the Central District of California on August 27, 1970, pursuant to subpoena.

A hearing was held on September 14, 1970, at which evidence was received in the form of an affidavit of Assistant United States Attorney Gerald F. Uelmen, and testimony of Norman L. Lippitt, attorney for defendant Polizzi. Pursuant to Rule 23(c) the extracts from the affidavit and testimony, contained in this memorandum, shall constitute findings of fact. The pertinent portion of Mr. Uelmen's affidavit is as follows:

"I am an Assistant United States Attorney for the Central District of California, assigned to assist the Frost Grand Jury in an investigation of possible violations of 18 U.S.C., Section 1952 (Interstate Transportation in Aid of Racketeering Enterprises);

"On July 30, 1970, I caused subpoena to be issued, addressed to Michael Polizzi, Detroit, Michigan, commanding his appearance to testify before the Frost Grand Jury in Los Angeles on August 27, 1970, at 9:30 A. M.;

"I have been informed that at approximately 9:30 A.M., on August 24,

1970, Special Agent Norman S. Transeth of the Detroit Office, Federal Bureau of Investigation, delivered the subpoena to Mr. Polizzi at his office at the Valley Die Cast Corporation, near Detroit. Mr. Polizzi had previously agreed to accept service of the subpoena in a telephone conversation with Agent Transeth.

"On August 25, 1970, I received a telephone call from a person identifying himself as Norman L. Lippitt in Detroit, Michigan, who advised me he was an attorney representing Michael Polizzi. Mr. Lippitt said he would like to accompany Mr. Polizzi to Los Angeles when he appears before the Grand Jury, but would be unable to do so that week. Therefore, he requested that Mr. Polizzi's Grand Jury appearance be re-scheduled for another date. I advised Mr. Lippitt that the Grand Jury was meeting all day Thursday, August 27, and all day Friday, August 28. I said we could accommodate Mr. Polizzi any time either of those two days, but we were unable to continue his appearance beyond that because all of the witnesses scheduled for appearance on those two dates [a total of 15 witnesses, 13 of whom resided in the Eastern United States] were concerned with one particular phase of a lengthy investigation, and we wanted all of them here at the same time. Mr. Lippitt indicated he felt this was unreasonable. I responded that we could not convene the Grand Jury at the convenience of the attorneys appearing on behalf of witnesses, and suggested Mr. Polizzi should obtain another attorney or find a local attorney to represent him. Mr. Lippitt then indicated he would seek relief in court.

"At no time in my conversation with Mr. Lippitt did he ever indicate that Michael Polizzi would in any way be inconvenienced by appearing on August 27, 1970, as commanded by the subpoena. Nor did Mr. Lippitt at any time indicate what business or commitments would prevent Mr. Lippitt from appearing on August 27, 1970.

"On August 26, 1970, I received a telephone call from a person identifying himself as Ralph M. Freeman, Chief Judge of the United States District Court for the Eastern District of Michigan. Judge Freeman said he received a petition to modify the subpoena served upon Michael Polizzi. I explained to him the reasons we had declined to continue Mr. Polizzi's appearance before the Grand Jury. He indicated that he felt three day's notice was insufficient. I suggested that he was without power to modify the subpoena, as it was a matter in the exclusive jurisdiction of the Central District of California. He said he felt otherwise, and said he was going to grant the continuance anyway.

"On August 27, 1970, U. S. Attorney Robert L. Meyer received copies of a letter and certified "ex parte order for modifying subpoena," sent to the Clerk of the United States District Court for the Central District of California by Attorney Robert J. Sandler of Detroit, Michigan. Copies of said letter and 'order' are attached hereto.

"On August 27, 1970, and on August 28, 1970, the Frost Grand Jury met as scheduled. Michael Polizzi did not appear on either day. All other witnesses appeared as scheduled."

The pertinent portion of Mr. Lippitt's testimony was in substance as follows:

Mr. Lippitt is an attorney licensed to practice in the State of Michigan and has his office in Detroit. He has represented defendant Polizzi. On August 25, 1970, he received a telephone call from defendant Polizzi advising him that the latter had been subpoenaed to appear before a Grand Jury in the Central District of California. Mr. Polizzi and Mr. Lippitt said to each other that they were unable to appear before the Grand Jury at the time indicated. Defendant Polizzi came to Mr. Lippitt's office later that day and it was decided that Mr. Lippitt would try to get "an adjournment." Mr.

Lippitt then spoke by telephone to Assistant U. S. Attorney Uelmen and asked if he could obtain an adjournment to another date. The only reason given for requesting the continuance was the convenience of Mr. Lippitt.[1] Mr. Uelmen said he would accommodate them by arranging for Mr. Polizzi's appearance at any time on August 27th or 28th, but that he would not be willing to put over the appearance beyond the latter date. Mr. Lippitt asked if Mr. Polizzi's appearance could not be deferred until the Grand Jury's next scheduled appearance on September 10, 1970. Mr. Uelman courteously replied in the negative.

Thereafter, Mr. Lippitt caused to be prepared a petition and proposed order for relief from the subpoena which he took that day to the United States District Court in Detroit, Michigan. Mr. Lippitt presented the matter to Chief U. S. District Judge Ralph Freeman. Judge Freeman questioned his jurisdiction to act on the petition and asked what authority Mr. Lippitt had for his request. Mr. Lippitt said he had no authority and the Judge responded that he wasn't going to sign any such order until Mr. Lippitt presented him with some authority. They arranged for a hearing on the matter the following morning.

The next day, August 26, 1970, Mr. Lippitt's associate, Robert Sandler met with Judge Freeman with a representative of the Detroit U. S. Attorney's Office present. Mr. Sandler was unable to produce any authority showing the Judge's jurisdiction. However, the Judge spoke to Mr. Uelmen in Los Angeles by telephone and thereafter the Judge signed the order. Mr. Sandler advised Mr. Lippitt that in his opinion the Judge was not going to grant the order but became angry and issued the order.

After the "order" was signed, Mr. Lippitt called defendant Polizzi and informed him of it. He also furnished a copy to Mr. Polizzi. On September 10, 1970, the date specified in the "order", defendant Polizzi, accompanied by Mr. Lippitt, arrived at the Grand Jury room in Los Angeles, but was not called as a witness. Defendant Polizzi was then served with the order to show cause which initiated the instant case.

The essential elements of the offense of contempt of court under the provisions of 18 U.S.C. § 401 are:

1. A lawful order of a court of the United States,

2. Disobedience to the order, and

3. Wilfulness.

█ The court order here was in the form of a subpoena directing defendant Polizzi to appear before the Federal Grand Jury in Los Angeles on August 27, 1970. The subpoena is in all respects in proper form and was duly served upon the defendant. However, defendant alleges that the subpoena is invalid on its face because it was served on August 24, 1970, and thus failed to accord him reasonable and adequate notice as required by Constitutional Due Process. Defendant cites no case supporting the proposition that a subpoena calling for a witness' appearance three days later is *per se* constitutionally defective. With the means of high speed travel available today there would ordinarily be no difficulty in a witness responding to a subpoena on three days notice from anywhere in the country. Further, as distinguished from cases cited by defendant involving civil summons, a subpoena merely requires the witness to appear and testify. He need not prepare to defend his rights as a party to the proceeding. This is not to say that upon motion of a witness served with a subpoena requiring his appearance three days later, the court would not be justi-

---

1. Polizzi apparently did tell Lippitt that his wife was going into the hospital for biopsy of a suspected malignancy. But Lippitt did not pass this information on to Uelmen nor did he use it as a reason for the attempted continuance later sought from Chief Judge Freeman in Detroit. And we note that Polizzi's wife did not actually enter the hospital until August 28 (the date after Polizzi's scheduled Grand Jury appearance in Los Angeles) and the biopsy was not performed until the 29th.

fied in granting a continuance under the particular circumstances involved. No such motion was made in this case. I find that the subpoena here in question was a lawful order of this Court.

■ The evidence is conclusive that defendant Polizzi did not appear at the Grand Jury on the date called for by the subpoena. He claims, in substance, that this failure to appear did not constitute disobedience to the subpoena because the Chief United States District Judge for the Eastern District of Michigan, Ralph M. Freeman, continued the date for his appearance to September 10, 1970, at which time he did appear. This raises the question of the power of Judge Freeman to issue such an order. Rule 17(a), Federal Rules of Criminal Procedure, states in part that a subpoena "shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein." Implicit in this rule is the proposition that a court can issue a subpoena only if it has before it some proceeding to which the witness is being summoned. See United States v. Morton Salt Co., 216 F.Supp. 250 (D.Minn.1962); aff'd 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1963). Further, a court cannot by subpoena, require a witness to appear at any place other than at the proceeding over which it has jurisdiction. United States v. Standard Oil Co., 316 F.2d 884 (7th Cir. 1963); United States v. Chin Lim Mow, 12 F.R. D. 433 (D.C.Cal.1952). Rule 17(g) indicates that failure to obey a subpoena is punishable as contempt only by the court from which it was issued. Under these principles, Judge Freeman had no proceeding before him to which a subpoena could summon defendant Polizzi; he had no power to order defendant Polizzi to appear at the Grand Jury in this District; and he lacked jurisdiction to hold defendant Polizzi in contempt for failure to obey the subpoena, even as he had purported to modify it. Under these circumstances, Judge Freeman's "order" continuing the date of defend-

ant Polizzi's appearance was a nullity and the latter's failure to appear on the date required by the subpoena constituted disobedience to the subpoena.

■ The last issue for determination relates to the intent of defendant Polizzi. The offense involved here is not a felony and upon conviction the Court could not impose a sentence of more than six months' confinement. Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). Under these circumstances, specific intent is not required for conviction. See Devitt & Blackmar, Federal Jury Practice and Instructions, (2d ed. 1970) § 13.03, and cases cited therein. It is only necessary that the defendant's conduct be "willful." He need not know that he was breaking the law, but only know what he is doing so that his misconduct does not occur by accident, inadvertence or other innocent reason. Finn v. United States, 219 F.2d 894 (9th Cir. 1955), cert. den. 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242 (1955); Dennis v. United States, 84 U.S.App.D.C. 31, 171 F.2d 986 (1949); aff'd 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950); Fields v. United States, 82 U.S.App.D.C. 354, 164 F.2d 97 (1947), cert. den. 332 U.S. 851, 68 S.Ct. 355, 92 L.Ed. 421 (1948). In this case defendant Polizzi knew that the subpoena called for his appearance before the Grand Jury on August 27, 1970. He knowingly failed to appear on that date. I find that this disobedience to the subpoena was willful.

■■ Defendant Polizzi argues that "willfulness" is negated by his claim of reliance upon the advice of counsel and the purported order of Judge Freeman. At the outset, it should be pointed out that there is no evidence as to what, if anything, the defendant relied upon since he did not testify. Even if it were assumed that the defendant relied upon the advice of counsel and the purported "court order," he would not thereby be excused from his failure to obey the subpoena. Reliance upon the advice of others—counsel or other persons—is no defense to a charge of disobeying a court order. United States v. Snyder, 428 F.2d

520 (9th Cir., June 11, 1970); Eustace v. Lynch, 80 F.2d 652, 656 (9th Cir. 1935); Taylor v. United States, 221 F.2d 809, 810 (6th Cir. 1955); In Re Door, 90 U.S.App.D.C. 190, 195 F.2d 766, 770, Note 6 (1952); United States v. Goldfarb, 167 F.2d 735 (2d Cir. 1948). Defendant claims that reliance upon the "order" of Judge Freeman differs in quality from reliance upon the advice of other persons. In this case, this is not so. The distinguished Chief Judge for the Eastern District of Michigan had no relation to, or jurisdiction to act in, the matter of defendant's subpoena and consequently he occupies the same position as any other person. Cases cited by defendant involving conflicting decrees of two different courts, each having jurisdiction to act, such as Loyning v. Loyning, 171 F.2d 565 (9th Cir. 1949), are of no help to defendant since, as previously mentioned, Judge Freeman was without authority to act in this matter and in fact and law his "order" was no order at all.

I find defendant Polizzi guilty of contempt of court in violation of Title 18, United States Code, Section 401.